

# Missouri Court of Appeals

## Southern District

### In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | No. SD38054 |
| | ) | |
| v. | ) | **Filed:  September 20, 2024** |
| | ) | |
| CHRISTOPHER W. SMITH, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF POLK COUNTY

Honorable Michael O. Hendrickson, Judge

## JUDGMENT VACATED AND CAUSE REMANDED FOR A NEW TRIAL

Following a jury trial, Christopher W. Smith was convicted of the class E felonies of resisting arrest and unlawful use of a weapon and was sentenced to one year in the county jail and a $5,000 fine for each count.[1]  Before trial, Smith applied for a public defender to represent him but was rejected by the public defender commission because he had posted a $25,000 bond, of which $2,500 was paid in cash.  Smith challenged that decision by filing an affidavit claiming indigency, and the trial court held a hearing and found Smith to be not indigent.

---

[1] See §§ 571.030.1(10) and 575.150.  All statutory citations are to RSMo (2016).  Smith's sentences were ordered to run concurrently.

Smith was given time to hire counsel but ultimately told the trial court it was his intent to waive counsel. The trial court conducted a ***Faretta*** hearing and Smith signed a waiver-of-counsel form.[2] The waiver-of-counsel form failed to advise Smith of the maximum range of punishment as required by statute. Despite this oversight, the trial court accepted Smith's waiver of counsel and Smith represented himself at trial and was convicted. Now, Smith appeals from the judgment in three points, arguing the trial court plainly erred by: not appointing counsel for him because he was indigent (point 1); finding he knowingly and intelligently waived counsel because his signed waiver-of-counsel form did not include all the necessary information as required by section 600.051 (point 2); and failing to conduct an adequate ***Faretta*** hearing (point 3). Because Smith's second point has merit, and is dispositive of this appeal, we reverse and remand for a new trial.

## Background and Procedural History

After Smith's first appearance in court, Smith was referred to the public defender's office, and a public defender entered his appearance. A week later, Smith posted a $25,000 surety bond, with $2,500 paid in cash. The public defender filed a motion to withdraw, which was sustained. Smith then retained counsel who entered her appearance.

Approximately eight months later, Smith's retained counsel filed a motion to withdraw, which was granted. The motion alleged Smith currently owed $2,200 in legal fees and had told retained counsel he was unable to pay his

---

[2] ***Faretta v. California***, 422 U.S. 806 (1975).

balance or any future trial expenses.  The motion requested the public defender be appointed to represent Smith.

After retained counsel withdrew, Smith again applied for public defender services.  However, the public defender's office sent Smith a letter stating it had determined Smith was ineligible for its services because Smith had "posted a bond that exceeds [their] Guidelines" and noted that "$2500 was paid in cash[,]" which "is considered an asset which exceeds prescribed guidelines for indigency." The letter advised Smith that he could appeal that decision to the trial court, which would require completing an indigence appeal affidavit.

Smith filed an indigence appeal affidavit challenging the public defender's denial of services.  The form listed his income as being from Social Security Disability Insurance ("SSI") in the amount of $756.90 and his assets as 12 acres of land he owned with his brother.[3]  For debts and expenses, he listed $300 for food, "paper" and "other items—The Rest."  The affidavit indicated Smith was unmarried and had no dependents.  Smith did not sign the affidavit or have it notarized as required by statute.

In June 2022, the trial court conducted a hearing to determine if Smith was indigent.  Smith testified about his assets, which included 12 acres that had been transferred to him and his brother through a beneficiary deed.  Smith said sometimes he paid the tax bill on the property and sometimes his brother paid it.

Smith acknowledged having a bond in this case, but denied he had

---

[3] Smith did not indicate whether SSI was a weekly or monthly amount on the form, but SSI is paid monthly according to the Social Security Administration's website.  *See* https://www.ssa.gov/ssi/text-over-ussi.htm (last visited Sept. 16, 2024).

personally posted it, and claimed someone named "Shirley" had come up with the money for him. The trial court noted only Smith's name appeared on the bond, and that Smith did not have any paperwork showing someone else posted the bond. The trial court found Smith was not indigent and did not qualify for public defender services.

After Smith's retained counsel withdrew, Smith never retained new counsel. He informed the trial court he intended to waive counsel and a *Faretta* hearing was conducted in October 2022. At the *Faretta* hearing, Smith was never advised of the maximum range of punishment he faced if convicted.

In January 2023, Smith again appeared in court for a hearing. At this hearing, Smith submitted a signed written waiver-of-counsel form that contained the language set forth in section 600.051. The waiver advised Smith of the charges, his right to have an attorney, the right to have an attorney appointed to represent him if he was unable to afford one, the right to a jury trial with the assistance of an attorney to confront and cross-examine witnesses, the right to remain silent, and the right to appeal the court's judgment should he exercise his right to trial and be found guilty. However, the space for setting forth the range of punishment for the charges was left blank. The trial court asked Smith if he understood the form, and Smith answered in the affirmative. When asked if he still wanted to waive his right to an attorney, Smith said he did not have a choice because he could not afford an attorney. Smith told the trial court he had twice been denied by the public defender's office. The trial court accepted Smith's written waiver.

4

## Standard of Review

Smith acknowledges none of his claims of error are preserved for our review. "Whether an unpreserved claim is statutory, constitutional, structural, or of some other origin, 'Rule 30.20 is the *exclusive* means by which an appellant can seek review of any unpreserved claim of error and said claim . . . is evaluated by this Court's plain error framework without exception.'"- **State v. Mills**, 687 S.W.3d 668, 675 (Mo. banc 2024) (quoting **State v. Minor**, 648 S.W.3d 721, 731 (Mo. banc 2022)) (emphasis added). "Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" **State v. Phillips**, 687 S.W.3d 642, 647 (Mo. banc 2024) (quoting **State v. Brandolese**, 601 S.W.3d 519, 526 (Mo. banc 2020)). "A demonstrated violation of a defendant's right to counsel satisfies the defendant's burden to prove the manifest injustice or miscarriage of justice required by plain-error review." **State v. Cox**, 659 S.W.3d 651, 653-54 (Mo. App. S.D. 2023).

## Point 2: Smith's Written Waiver of Counsel

In point 2, Smith argues the trial court plainly erred in finding he knowingly and intelligently waived counsel because the written waiver that Smith signed did not include all the necessary information required by section 600.051. We agree.

The Sixth Amendment to the United States Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This constitutional right

extends to all offenses for which imprisonment may be imposed, ***State v. Sullivan***, 640 S.W.3d 149, 154 (Mo. App. E.D. 2022), and the constitutional right to counsel implies the right to waive counsel. ***State v. Black***, 223 S.W.3d 149, 153 (Mo. banc 2007).

> "The decision whether to allow a criminal defendant to waive the right to counsel and exercise the right of self-representation is one of the most sensitive rulings required of a trial court." [*Cox*, 659 S.W.3d] at 654 (quoting *Black*, 223 S.W.3d at 155).  To waive the right to counsel, the defendant must make the waiver unequivocally, in a timely manner, knowingly, and intelligently. *Black*, 223 S.W.3d at 153.  We employ "a strong presumption against the waiver of counsel." *State v. Kunonga*, 490 S.W.3d 746, 762 (Mo. App. [W.D.] 2016) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

***State v. Lavender***, 680 S.W.3d 119, 129 (Mo. App. S.D. 2023).

No person may be imprisoned if he or she was unrepresented by counsel unless that person knowingly and intelligently waived counsel.  ***Cox***, 659 S.W.3d at 654.  Before a court can conclude that a defendant has effectively waived the right to counsel, two requirements must be met:

> First, "[t]here must be a 'thorough *Faretta* evidentiary hearing' that establishes that 'the defendant understands exactly what rights and privileges he is waiving, as well as the dangers associated with waiving constitutional rights.'" [*Kunonga*, 490 S.W.3d at 764] (quoting *State v. Black*, 223 S.W.3d 149, 155-56 (Mo. banc 2007)).  Second, the defendant must be given the opportunity to sign the written waiver of counsel mandated by Section 600.051.  *Id.* at 764-65.

***Masters***, 651 S.W.3d 863, 868 (Mo. App. W.D. 2022).  The State has the burden to prove a waiver of counsel is valid and that the defendant waived the right to counsel with a clear understanding of those rights and the consequences of

6

waiving those rights.[4] ***Sullivan,*** 640 S.W.3d at 156. "Once the state puts forth prima facie evidence of a constitutional waiver . . . the burden shifts to the [defendant] to prove by a preponderance of the evidence that the [defendant's] waiver was involuntary, unintelligent, or unknowing." ***Teter***, 665 S.W.3d at 316 (quoting ***State v. Shafer***, 969 S.W.2d 719, 727-28 (Mo. banc 1998)).

Section 600.051 requires a written waiver-of-counsel form contain "very specific" content. ***Kunonga***, 490 S.W.3d at 764. This specific content, includes, among other things, that a defendant be advised of the maximum possible sentence. § 600.051.1(3). Because section 600.051 "protects a fundamental constitutional right[,]" a violation of the statute constitutes evident, obvious, and clear error. ***Masters***, 651 S.W.3d at 868; ***State v. Peck***, 671 S.W.3d 400, 406 (Mo. App. W.D. 2023). "Additionally, a violation of Section 600.051 constitutes a manifest injustice or miscarriage of justice 'because a violation of the right to counsel is structural error that is presumed to infect the entirety of a trial.'" ***Peck***, 671 S.W.3d at 406-07 (quoting ***Masters***, 651 S.W.3d at 868). Our Supreme Court has "felt compelled to insist on strict compliance with [section 600.051], holding that [a] failure to use the written form mandated reversal, *even in the absence of prejudice*." ***State v. Hunter***, 840 S.W.2d 850, 860 (Mo. banc 1992) (emphasis added).

---

[4]    Because the State bears the burden to prove that an unrepresented defendant waived the right to counsel, it follows that to sustain this burden, the State must prove compliance with section 600.051 and that a defendant was afforded a *Faretta* hearing. Only then will the burden shift to the unrepresented defendant to establish that the waiver of counsel was not knowing, voluntary, or intelligent. *State v. Kunonga*, 490 S.W.3d 746, 765 (Mo. App.[W.D.] 2016).

***State v. Teter***, 665 S.W.3d 306, 313 (Mo. banc 2023) (internal quotations omitted).

Nevertheless, exceptions to this rule exist.[5] One such exception is when a defendant is presented a waiver-of-counsel form in compliance with section 600.051 but refuses to sign it. *Kunonga*, 490 S.W.3d at 766. In such a case, a defendant effectively waives the written waiver requirement by refusing to sign the form because to hold otherwise would "permit a form of gamesmanship which might seriously interfere with the trial proceedings." *Id.* (quoting *May v. State*, 718 S.W.2d 495, 497 (Mo. banc 1986)). The State argues that something similar to this exception should apply and cites us to *State v. Lewis*, 222 S.W.3d 284 (Mo. App. E.D. 2007), for the proposition that a written waiver is not required where the waiver of counsel is "implied by [the defendant's] conduct" in failing to hire counsel. The State's argument is unavailing because, in *Lewis*, the defendant *was* advised of the perils of self-representation and this Court did not address whether the defendant must sign a written waiver that complies with the statute; it merely held that there was no plain error in refusing to appoint counsel to represent the defendant where the defendant had ample time to secure counsel.[6] *Id.* at 288.

A second exception is when the State "effectively demonstrates that an unpreserved violation of section 600.051 is a mere technical violation having no impact on the knowing, voluntary, and intelligent waiver of counsel because the

---

[5] While not an "exception[,]" our Supreme Court "has clarified that section 600.051 is not implicated when a defendant is provided 'standby' or 'hybrid' counsel because the defendant 'has not actually waived counsel.'" *Kunonga*, 490 S.W.3d at 766 (quoting *Hunter,* 840 S.W.2d at 860)). In our case, Smith did not receive hybrid or standby counsel.

[6] While we agree there are circumstances where it will be impossible to secure a written waiver because a defendant refuses to sign it, those are not the circumstances before us. And, even in those circumstances, the defendant must be given an opportunity to sign a written waiver that complies with the statute.

8

content omitted from the written waiver form was covered, nearly verbatim, in a *Faretta* hearing." **Kunonga**, 490 S.W.3d at 770. This exception "allows the State, in a plain error case where the exception applies, to overcome the otherwise obligatory holding that a violation of section 600.051 constitutes a manifest injustice or miscarriage of justice." **Id.**

In our case, neither exception applies. Smith did not refuse to sign a waiver that complied with section 600.051. Instead, he signed a non-compliant waiver that left blank the maximum possible sentence for his offenses. Likewise, the omitted content—the maximum possible sentence for Smith's offenses—was *never* addressed at the **Faretta** hearing. In fact, there is nothing in the record, either orally or in writing, that demonstrates the trial court ever advised Smith of the maximum range of punishment. It was plain error for the trial court to fail to advise Smith of the maximum possible sentence in the written waiver-of-counsel form, and the record does not demonstrate Smith's waiver of counsel was made knowingly and intelligently. Point 2 is granted.

## Conclusion

The judgment of the trial court is vacated, and the matter is remanded for a new trial.


MARY W. SHEFFIELD, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS